1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   STERLING LAMONT AVERY,                    No.  2:23-cv-1612 DJC CSK P

12                  Petitioner,

13          v.                                 FINDINGS & RECOMMENDATIONS

14   ROBERTO ARIAS, Warden,

15                  Respondent.

16

17   **I. INTRODUCTION**

18          Petitioner is a state prisoner, proceeding without counsel, with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2020 conviction for first degree

20   murder (Cal. Penal Code § 187(a)) with an enhancement for personally and intentionally

21   discharging a firearm, causing great bodily injury or death (Cal. Penal Code § 12022.53(d)).

22   Petitioner is serving a sentence of 50 years to life imprisonment.

23          This action proceeds on the amended petition filed March 25, 2024.  (ECF No. 16.)  The

24   amended petition raises the following claims: 1) the trial court erred in admitting evidence of

25   threats against a witness; 2) the trial court erred in excluding evidence of the victim's gang

26   membership and a witness' juvenile record; 3) prosecutorial misconduct; and 4) sentencing error.

27   After carefully considering the record, this Court recommends that the petition be denied.

28   ///

                                         1

## II.  STANDARDS FOR A WRIT OF HABEAS CORPUS UNDER ANTITERRORISM AND EFFECTIVE DEATH PENALTH ACT (AEDPA)

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established Federal law" consists of holdings of the Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39-40 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48-49 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal

1    Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further,

2    where courts of appeals have diverged in their treatment of an issue, there is no "clearly

3    established federal law" governing that issue. See Carey v. Musladin, 549 U.S. 70, 77 (2006).

4         A state court decision is "contrary to" clearly established federal law if it applies a rule

5    contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

6    precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

7    Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant

8    the writ if the state court identifies the correct governing legal principle from [the Supreme

9    Court's] decisions, but unreasonably applies that principle to the facts of the prisoner's case."[1]

10   Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413); see also Chia v.

11   Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, "a federal habeas court may not issue

12   the writ simply because that court concludes in its independent judgment that the relevant state-

13   court decision applied clearly established federal law erroneously or incorrectly.  Rather, that

14   application must also be unreasonable." Williams, 529 U.S. at 411; see also Schriro v. Landrigan,

15   550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 ("It is not enough that a federal habeas court,

16   in its independent review of the legal question, is left with a firm conviction that the state court

17   was erroneous") (internal quotations and citation omitted).  "A state court's determination that a

18   claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

19   the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011)

20   (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

21   obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

22   ruling on the claim being presented in federal court was so lacking in justification that there was

23   an error well understood and comprehended in existing law beyond any possibility for fair-

24   minded disagreement." Id. at 103.

25        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

26   _____

27   [1]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
     presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
28   384 F.3d 628, 638 (9th Cir. 2004)).

1  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

2  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

3  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

4  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

5  considering de novo the constitutional issues raised.").

6      The court looks to the last reasoned state court decision as the basis for the state court

7  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

8  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

9  previous state court decision, this court may consider both decisions to ascertain the reasoning of

10  the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

11  federal claim has been presented to a state court and the state court has denied relief, it may be

12  presumed that the state court adjudicated the claim on the merits in the absence of any indication

13  or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption

14  may be overcome by a showing "there is reason to think some other explanation for the state

15  court's decision is more likely."  Id. at 99-100.  Similarly, when a state court decision on

16  petitioner's claims rejects some claims but does not expressly address a federal claim, a federal

17  habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the

18  merits.  Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98).  If a

19  state court fails to adjudicate a component of the petitioner's federal claim, the component is

20  reviewed de novo in federal court.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 534 (2003).

21      Where the state court reaches a decision on the merits but provides no reasoning to

22  support its conclusion, a federal habeas court independently reviews the record to determine

23  whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v.

24  Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

25  review of the constitutional issue, but rather, the only method by which we can determine whether

26  a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no

27  reasoned decision is available, the habeas petitioner has the burden of "showing there was no

28  reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

4

1     A summary denial is presumed to be a denial on the merits of the petitioner's claims.

2  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze

3  just what the state court did when it issued a summary denial, the federal court reviews the state

4  court record to "determine what arguments or theories . . . could have supported the state court's

5  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

6  arguments or theories are inconsistent with the holding in a prior decision of [the Supreme]

7  Court."  Richter, 562 U.S. at 101.  It remains the petitioner's burden to demonstrate that 'there

8  was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939

9  (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

10    When it is clear, however, that a state court has not reached the merits of a petitioner's

11  claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

12  habeas court must review the claim de novo.  Stanley, 633 F.3d at 860 (citing Reynoso v.

13  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006)).

14  **III.  FACTUAL BACKGROUND**

15    The opinion of the California Court of Appeal contains a factual summary of petitioner's

16  case.  After independently reviewing the record, this Court finds this summary to be accurate and

17  adopts it below:

18      Prosecution Case

19      Jessica Mathis began dating defendant in May 2016. Defendant
        moved in with Mathis and her two children in a Stockton apartment.
20      Mathis subsequently obtained another apartment, which she put in
        her name.
21
        The relationship ended in January 2018, but defendant and Mathis
22      kept in contact. Mathis moved to the other apartment while defendant
        remained in the apartment they had shared. Mathis started dating
23      Aaron Ramsey; he moved in with Mathis soon after they started
        dating.
24
        On February 10, 2018, Mathis and Ramsey were outside their
25      apartment, talking by Mathis' car, when defendant approached them
        and said he needed a ride to work. As Ramsey walked to his car,
26      defendant asked Mathis if Ramsey was her new boyfriend.
        Defendant "flinched" at Mathis as if he wanted to hit her but did not
27      touch her. Ramsey told defendant not to put his hands on Mathis.

28      Ramsey's intervention led to an argument between defendant and

5

Ramsey, which escalated to a fist fight. When a friend or brother of Ramsey pulled up during the fight, Ramsey asked the person to "give me the gun." Defendant replied, "oh, so you're going to shoot me? You want to shoot me?" Defendant then jumped into Mathis' car and drove away without obtaining her permission to take the car.

Mathis called defendant several times that day, asking him to return her car. Defendant promised to return the car but never did. He told Mathis he had wrecked the car but did not tell her where it happened. Mathis told defendant she would report the car as stolen. When she reported the car as stolen to the Stockton police, she falsely reported that defendant had a gun when he took the car. She lied about the gun to give defendant a "wake-up call" and because she did not want defendant to hurt Ramsey. Mathis recovered her car about two weeks later.

On February 19, 2018, Mathis and Ramsey left their apartment for work in a borrowed car. Ramsey stopped at a nearby Chevron gas station to put air in one of the tires. He pulled up next to an air pump and went into the store at the gas station, while Mathis stayed in the car. Mathis had her head down as she was writing in her work journal when she heard shots fired; they sounded very loud, as if nearby. She looked up to see Ramsey running in front of the car. Ramsey was then shot in the back and fell to the ground, where he was shot a few more times.

Mathis jumped out of the car and ran to Ramsey. The shooter, defendant, ran towards the back of the car. While defendant wore a hooded sweatshirt with the hood pulled tight over his hair, defendant's face was not covered, and Mathis could see his face in profile. Defendant rode away down Fremont Street on a bicycle.

Steven Siu was making a delivery at the Chevron gas station that day when he heard several gunshots while he was inside the back of his truck. Shelly Stanful was stopped at a traffic light at the corner where the gas station was located when she too heard three or four gunshots close by. Stanful then heard a scream followed by four or five more shots. Siu and Stanful both saw a person run around the side of the gas station and leave on a bicycle. The person was wearing a hooded sweatshirt and dark pants and was about 5 feet 8 inches tall with a slight build.

Mathis stayed with Ramsey until the paramedics arrived and she moved the car out of the way. When moving the car, Mathis hid a gun that Ramsey had under the front seat. The gun remained in the car during the entire incident; Mathis did not tell the police about the gun to keep Ramsey out of trouble.

When the police arrived, they directed Mathis to stop the car and asked if she knew who shot Ramsey. Mathis said she did not know because she wanted to go to the hospital with Ramsey. She was eventually allowed to go to the hospital with Ramsey's brother.

Ramsey was pronounced dead at the hospital. He sustained nine gunshot wounds, three of which were fatal, individually or in

combination.

At the scene, officers collected .45-caliber shell casings of various brands, including Federal, Winchester, and PMC. Ramsey's gun was found in the borrowed car. It was a .9mm semi-automatic with an illegal extended magazine and could not have fired the .45-caliber rounds found at the scene. Surveillance footage from the Chevron gas station and stills from the video were shown to the jury.

Defendant was arrested at his home on the day of the shooting. A swab of his hands revealed gunshot residue, indicating a fairly recent exposure. Forty-five caliber ammunition was found in the apartment. The ammunition included 24 live rounds of the Federal brand and one live round of Nosler brand.

Defense

Latent fingerprints on an ammunition box in defendant's home did not match defendant's. Clothes found in his home contained DNA from at least four contributors. The number of contributors precluded comparison of individual samples.

Ron Beegle testified as an expert on cell phone digital forensics. The cell phone data from defendant's phone on February 19, 2018, showed it was not possible for his phone to be at the scene of the shooting.

Stipulations

Defendant's phone made 55 outgoing calls to Mathis' phone between January 1, 2018, and February 19, 2018. Mathis' phone made 54 outgoing calls to defendant's phone. Defendant's last call to Mathis' phone was made on February 18, 2018, at 11:14 a.m. Mathis called 911 at 11:06 a.m. on February 19, 2018.

Respondent's Lodged Doc. 8 at pp. 2-5 (ECF No. 19-8 at 2-5).

**IV. DISCUSSION**

Petitioner raised the four claims raised in the amended petition in his direct appeal. The California Court of Appeal issued a reasoned decision denying petitioner's claims. Respondent's Lodged Document 8 (ECF No. 19-8). The California Supreme Court denied petitioner's petition for review without comment or citation. Respondent's Lodged Document 9 at p. 1 (ECF No. 19-9 at 1). Accordingly, this Court considers whether the denial of petitioner's claims by the California Court of Appeal was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. See 28 U.S.C. § 2254(d).

7

**A.  Claim One: Admitting Evidence of Alleged Threats**

The California Court of Appeal denied claim one for the following reasons:

> Defendant contends the trial court prejudicially erred in admitting evidence that Mathis had been threatened.

> A. Background

> During cross-examination, Mathis testified that she told the detective at the hospital that she saw defendant's face but was not sure if he was actually there or because he was weighing "so heavy" on her mind. Her testimony at the preliminary hearing was the same as what she had told the detective. Mathis testified that she was lying when she expressed this uncertainty, and her trial testimony identifying defendant as the shooter was the truth.

> During redirect, the prosecutor asked Mathis if she remembered being asked at the preliminary hearing if she was afraid to identify defendant as the shooter. After the trial court overruled defense counsel's relevancy and hearsay objections, Mathis testified that she did not remember being asked about being afraid.

> Defense counsel requested a bench conference while Mathis reviewed the preliminary hearing transcripts. At the bench conference, the prosecutor indicated he wanted to present evidence that Mathis was threatened, and this was why she had been afraid to make the identification. After the trial court ruled such evidence was relevant to Mathis' credibility by providing a motive for her to lie at the preliminary hearing, the defense raised the additional relevancy objection that the threats had not kept her from making the identification. The trial court overruled the objection.

> Mathis then testified that at the preliminary hearing, she had testified to receiving threats from some of the victim's family and some from the defendant. She also testified on redirect that the threats had affected her "[s]omewhat" at the preliminary hearing because "[i]t's just a bad situation to be in. You know, I don't want one of my kids to get hurt on accident because of the situation I put myself in. So that part bothers me." On cross-examination, she stated that the threats "had a part in" influencing her identification testimony at the preliminary hearing. She also admitted not reporting the threats to the police and testifying at the preliminary hearing that the threats had kept her from making a positive identification of the shooter.

> B. Analysis

> Defendant contends the evidence of threats should have been excluded pursuant to Evidence Code section 352.

> The Attorney General asserts that while defense counsel raised relevancy objections, counsel never asserted the evidence was inadmissible under Evidence Code section 352, forfeiting the contention on appeal. (See People v. Barnett (1998) 17 Cal.4th 1044, 1130 [objection asserting only relevancy without further

8

amplification will not preserve an Evidence Code section 352 claim on appeal].) However, "counsel's lack of express reference to Evidence Code section 352 is not itself fatal to defendant's claim...." (People v. Kirkpatrick (1994) 7 Cal.4th 988, 1014-1015, disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.) On the record before us, however, we do find forfeiture.

During argument on the admissibility of the threat evidence, defense counsel stated: "And Sterling she said he had threatened her. So I don't want to go down that road where we get into that. She said she received threats from the victim's family. And I think she also said she got threats from people who knew Sterling." Defendant asserts the statement, "I don't want to go down that road where we get into that" along with the remaining argument was sufficient to preserve the Evidence Code section 352.

We disagree. Counsel apparently "did not want to go down the road" regarding Sterling (defendant's first name) threatening Mathis. Counsel's remarks do not rise to the level of an Evidence Code section 352 objection, as also demonstrated by the trial court's statements during its ruling on the objection to that testimony. Shortly after defense counsel made the "did not want to go down the road" remark, the trial court ruled, "That's relevant. Because you brought up the fact that she's lied. And if she has a motive for lying, that's relevant. If you object, it's going to be overruled. Because it's relevant." After defense counsel made additional arguments regarding relevancy, the trial court ruled, "It's still going to be, if you object, I'm going to allow it. And you can cross on that."

The trial court never addressed any prejudicial effect of the testimony, ruling only on its relevance because defendant never raised an Evidence Code section 352 objection. Since defendant now correctly admits that the evidence was relevant (see People v. Burgener (2003) 29 Cal.4th 833, 869 ["[e]vidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible"]), his contention, which is based on the alleged prejudicial effect of the evidence, is forfeited. (See Evid. Code, § 353, subd. (a); People v. Alexander (2010) 49 Cal.4th 846, 912 [failure to object to introduction of evidence forfeits claim evidence was improperly admitted].)

Respondent's Lodged Doc. 8 at pp. 5-10.

The legal grounds of claim one are not entirely clear. See Amended Petition at p. 6-7. In claim one, petitioner appears to raise state law claims. Petitioner also appears to raise a federal claim because petitioner argues that admission of the threats evidence violated his "Sixth Amendment right to autonomy." Id. at p. 7. The Supreme Court has recognized a Sixth Amendment right to autonomy in making decisions as to the objective of one's defense. See McCoy v. Lousiana, 584 U.S. 414, 421-22 (2018). This Court finds that claim one does not state

9

1  a Sixth Amendment right to autonomy claim.  Instead, petitioner may be attempting to raise a

2  claim pursuant to the Sixth Amendment Confrontation Clause based on admission of the threats

3  evidence.  See Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986) ("The Confrontation Clause of

4  the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be

5  confronted with the witnesses against him.").  For the reasons discussed below, this Court finds

6  that petitioner failed to exhaust his Sixth Amendment claim and any other federal claim petitioner

7  may be raising in claim one.

8       The exhaustion of state court remedies is a prerequisite to the granting of a petition for

9  writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  If exhaustion is to be waived, it must be waived

10  explicitly by respondent's counsel.  28 U.S.C. § 2254(b)(3).  A waiver of exhaustion, thus, may

11  not be implied or inferred.  A petitioner satisfies the exhaustion requirement by providing the

12  highest state court with a full and fair opportunity to consider all claims before presenting them to

13  the federal court.  Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d

14  1083, 1086 (9th Cir. 1985).

15       In his opening briefing filed in the California Court of Appeal and in the petition for

16  review, petitioner argued that admission of the threats evidence violated state law only.

17  Respondent's Lodged Doc. 4 at pp. 19-22 (ECF No. 19-4 at 19-22); Respondent's Lodged Doc. 9

18  at pp. 9-12 (ECF No. 19-9 at 9-1.).  In the petition for review, petitioner stated that he did not

19  identify a federal constitutional basis for the argument raised regarding admission of the threats

20  evidence.  Respondent's Lodged Doc. 9 at p. 9 n. 1.  Because petitioner failed to raise a Sixth

21  Amendment claim, or any other federal claim in his petition for review filed in the California

22  Supreme Court regarding admission of the threats evidence, petitioner's Sixth Amendment claim

23  and any other federal claim raised in claim one should be dismissed as unexhausted.

24       To the extent claim one is based on violation of state law, petitioner fails to state a claim

25  for federal habeas relief.  Federal habeas relief is not available for error of state law.  See Estelle,

26  502 U.S. at 67 ("federal habeas corpus relief does not lie for errors in state law") (citation and

27  internal quotations omitted).  Accordingly, petitioner's state law claims raised in claim one should

28  be denied.

**B.  Claim Two: Excluding Evidence of Victim's Gang Membership and Witness' Juvenile Record**

The California Court of Appeal denied claim two for the following reasons:

Exclusion of Defense Evidence

Defendant claims the trial court prejudicially erred in two rulings excluding defense evidence, namely the victim Ramsey's gang membership and uncharged crimes committed by Mathis when she was a juvenile.

A. Background

Defendant moved pretrial to admit evidence that Ramsey was a documented gang member, asserting that most people are not targets of violence, but if the jury knew Ramsey was a gang member, "then it doesn't become such a fantastic idea that someone else might shoot him in broad daylight in these circumstances... [¶] ... [W]hen people are in gangs, we know that sometimes they are subjected to random acts of violence like this." The trial court likened this to third-party culpability evidence and denied the motion, finding "there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." It also denied the motion as the gang evidence was more prejudicial than probative.

An Evidence Code section 402 hearing was held during Mathis' cross-examination. At the hearing, Mathis testified that when she was 16 or 17 years old, she robbed a woman of her purse by using a fake gun. During the incident, the victim's car was stolen. She also participated in a residential burglary at that time.

Defense counsel sought to cross-examine Mathis about whether she had participated in the robbery and whether she had burglarized a friend's foster parents. The prosecutor objected on remoteness grounds. The trial court excluded the evidence of Mathis' juvenile misconduct pursuant to Evidence Code section 352.

B. Analysis

Defendant claims it was an abuse of the trial court's discretion under Evidence Code section 352 to exclude evidence of the victim's gang membership and of Mathis' juvenile misconduct, and that the exclusion of this evidence deprived him of his due process right to present a defense and his right to confrontation.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." An appellate court reviews a trial court's rulings under Evidence Code section 352 for abuse of discretion and will reverse only if the court """"exercised its discretion in an arbitrary, capricious, or patently

11

absurd manner that resulted in a manifest miscarriage of justice." [Citation.]' [Citation.]" (<u>People v. Merriman</u> (2014) 60 Cal.4th 1, 74.)

"[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (<u>People v. Hall</u> (1986) 41 Cal.3d 826, 833.) There was no evidence of gang involvement in Ramsey's killing, and no evidence of any motive for the killing other than defendant's jealousy against his ex-girlfriend's new boyfriend. The mere fact that the victim was a gang member, without more, makes the offered evidence at most minimally relevant. Our Supreme Court has warned against the introduction of "evidence of gang membership if only tangentially relevant, given its highly inflammatory impact." (<u>People v. Cox</u> (1991) 53 Cal.3d 618, 660, disapproved on other grounds in <u>People v. Doolin</u>, supra, 45 Cal.4th at p. 421, fn. 22.) Such is the case here. Given its real threat of prejudice and minimal relevance, it was not abuse of discretion to exclude the gang evidence. (See <u>People v. Edelbacher</u> (1989) 47 Cal.3d 983, 1018 [exclusion of evidence of victim's Hell's Angels membership proper as the "evidence did not identify a possible suspect other than defendant" and "did not even establish an actual motive but only a possible or potential motive for [the victim's] murder"].)

We are likewise unconvinced by the contention regarding defendant's attempt to cross-examine Mathis regarding her misdeeds as a juvenile. "Cross-examination is subject to restriction under Evidence Code section 352 if it is cumulative or if it constitutes impeachment on collateral issues. [Citations.]" (<u>People v. Greenberger</u> (1997) 58 Cal.App.4th 298, 352.) Mathis was nearly 32 years old when she testified, rendering the juvenile misconduct remote and unconnected to the conduct at issue in this case. The defense also had ample opportunity to cross-examine her regarding much more relevant, less tangential issues such as the inconsistencies regarding her identification of the killer, as well as her attempts to conceal Ramsey's illegal firearm from the police. Impeachment with other than a felony conviction contains "problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present. Hence, courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value." (<u>People v. Wheeler</u> (1992) 4 Cal.4th 284, 296-297, fn. omitted.) It was also within the trial court's discretion to prevent cross-examination regarding this tangential evidence with a clear potential for prejudice.

Neither of the trial court's rulings implicate defendant's constitutional rights. A defendant's constitutional right extends only to the presentation of relevant and material evidence. (<u>Washington v. Texas</u> (1967) 388 U.S. 14, 23; <u>People v. Babbitt</u> (1988) 45 Cal.3d 660, 684.) Unless a particular rule of evidence is itself unconstitutional, a court's evidentiary rulings do not, as a general matter, impermissibly infringe on the accused's right to present a

defense. (<u>People v. Boyette</u> (2002) 29 Cal.4th 381, 414.) Rather, courts retain "a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citations.]" (<u>People v. Hall</u>, supra, 41 Cal.3d at p. 834.) Likewise, "'"[a]lthough completely excluding evidence of an accused's defense theoretically could rise to [the level of a constitutional violation], excluding defense evidence on a minor or subsidiary point does not impair an accused's due process right to present a defense."' [Citation.]" (<u>People v. Lucas</u> (2014) 60 Cal.4th 153, 279, disapproved on other grounds in <u>People v. Romero and Self</u> (2015) 62 Cal.4th 1, 53, fn. 19.) Exclusion of the minimally relevant, prejudicial gang evidence did not deprive defendant of his right to present a defense.

"'In particular, notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352.' [Citation.] '"[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. [Citation.]" [Citations.] The confrontation clause allows "trial judges ... wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." [Citation.] In other words, a trial court may restrict cross-examination on the basis of the well-established principles of Evidence Code section 352, i.e., probative value versus undue prejudice. [Citation.] There is no Sixth Amendment violation at all unless the prohibited cross-examination might reasonably have produced a significantly different impression of credibility.' [Citation.]" (<u>People v. Ardoin</u> (2011) 196 Cal.App.4th 102, 119, italics omitted, disapproved on other grounds in <u>People v. Dalton</u> (2019) 7 Cal.5th 166, 214.) Per <u>Ardoin</u>, preventing the main prosecution witness from being cross-examined on a nearly 15-year-old juvenile misconduct tangential to the case and not significantly affecting her credibility did not violate defendant's confrontation rights.

Respondent's Lodged Doc. 8 at pp. 7-10.

      1. <u>Exclusion of Evidence re: Victim's Gang Membership</u>

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted). The right to present a defense may be violated by the erroneous exclusion of defense evidence. <u>See Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973). The right to present a defense, however, "'is not unlimited, but rather is subject to reasonable restrictions,' such as evidentiary and procedural

1  rules." <u>Moses v. Payne</u>, 555 F.3d 742, 757 (9th Cir. 2009) (quoting <u>United States v. Scheffer</u>,

2  523 U.S. 303, 308 (1998)).

3  　　"[T]h[e Supreme] Court has never held that the Confrontation Clause entitles a criminal

4  defendant to introduce *extrinsic evidence* for impeachment purposes."  <u>Nevada v. Jackson</u>, 569

5  U.S. 505, 512 (2013) (emphasis in original).  Due process is not violated by the exclusion of

6  evidence that is only marginally relevant, repetitive, or more prejudicial than probative.  <u>See</u>

7  <u>Crane</u>, 476 U.S. at 689-90; <u>Taylor v. Illinois</u>, 484 U.S. 400, 410 (1988) ("The accused does not

8  have an unfettered right to offer testimony that is incompetent, privileged, or otherwise

9  inadmissible under standard rules of evidence."); <u>Nevada v. Jackson</u>, 569 U.S. 505, 509 (2013)

10  ("Only rarely have we held that the right to present a complete defense was violated by the

11  exclusion of defense evidence under a state rule of evidence.").

12  　　The California Court of Appeal correctly observed that the constitutional right to present a

13  complete defense is implicated when a defendant seeks to admit evidence that is "relevant and

14  material" to the defense.  <u>See</u> <u>Washington v. Texas</u>, 388 U.S. 14, 23 (1967).  The California Court

15  of Appeal also correctly observed that exclusion of evidence on a minor or subsidiary point does

16  not violate an accused's due process right to present a defense.  <u>See</u> <u>Crane</u>, 476 U.S. at 689-90.

17  Applying these legal standards, the California Court of Appeal found that exclusion of evidence

18  regarding the victim's gang membership did not violate petitioner's constitutional right to present

19  a defense because evidence of the victim's gang membership was minimally relevant.  In

20  discussing petitioner's related state law claim, the California Court of Appeal observed that there

21  was no evidence of gang involvement in the victim's killing, and no evidence of any motive for

22  the killing other than petitioner's jealousy against his ex-girlfriend's new boyfriend.  The

23  California Court of Appeal also noted that the California Supreme Court had warned against the

24  introduction of evidence of gang membership if only tangentially relevant given its highly

25  inflammatory impact.  This Court finds that the finding by the California Court of Appeal that

26  exclusion of evidence regarding the victim's gang membership did not violate petitioner's

27  constitutional right to present a defense was neither contrary to nor an unreasonable application of

28  clearly established United States Supreme Court authority.  Accordingly, this claim should be

14

1   denied.

2                    2.  Exclusion of Evidence re: Mathis' Juvenile Record

3       Petitioner claims that the trial court violated the Confrontation Clause by preventing him

4   from cross-examining Mathis, the main prosecution witness, regarding her "juvenile misconduct."

5   "[A] primary interest secured by [the Confrontation Clause] is the right of cross-examination."

6   Douglas v. Alabama, 380 U.S. 415, 418 (1965); see also Maryland v. Craig, 497 U.S. 836, 845

7   (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the

8   evidence against a criminal defendant by subjecting it to rigorous testing in the context of an

9   adversary proceeding before the trier of fact."); Davis v. Alaska, 415 U.S. 308, 316 (1974)

10  ("Cross-examination is the principal means by which the believability of a witness and the truth

11  of his testimony are tested.").  A "defendant states a violation of the Confrontation Clause by

12  showing that he was prohibited from engaging in otherwise appropriate cross-examination

13  designed to show a prototypical form of bias on the part of the witness..." Delaware, 475 U.S. at

14  680.  While "the Confrontation Clause guarantees an opportunity for effective cross-

15  examination," it does not guarantee "cross-examination that is effective in whatever way, and to

16  whatever extent, the defense might wish." Id. at 679 (internal quotation marks omitted).

17  Accordingly, trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to

18  impose reasonable limits on such cross-examination based on concerns about, among other

19  things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is

20  repetitive or marginally relevant." Id.

21      The California Court of Appeal found that the trial court's order prohibiting petitioner

22  from cross-examining Mathis regarding her "juvenile misconduct" did not violate the

23  Confrontation Clause because the "juvenile misconduct" did not significantly affect Mathis'

24  credibility as it was remote in time and unconnected to the conduct at issue.[2]  In discussing the

---

25  [2]   In a hearing held outside the presence of the jury, Mathis testified that she had twice previously
26  robbed people.  6 RT at 376 (ECF No. 19-3 at 376).  The first robbery occurred when Mathis was
    fifteen.  Id.  The second robbery occurred when Mathis was sixteen or seventeen.  Id.  Mathis
27  testified that at the time of the trial, she would turn thirty-two in a couple of days.  Id.  In
    describing the robberies, Mathis did not testify that she was ever convicted of crimes related to
28  these robberies.  Id. at 377-78.  Mathis also testified that she stole a car when she was fifteen.  Id.

related state law claim, the California Court of Appeal observed that petitioner also had "ample opportunity" to cross-examine the prosecution witness regarding much more relevant, less tangential issues.  Based on this reasoning, this Court finds that the California Court of Appeal's finding that the order prohibiting petitioner from cross-examining Mathis regarding her "juvenile misconduct" did not violate the Confrontation Clause was neither contrary to nor an unreasonable application of clearly established Supreme Court authority.  Accordingly, this claim should be denied.

### C.  Claim Three: Prosecutorial Misconduct

The California Court of Appeal denied petitioner's prosecutorial misconduct claims for the following reasons:

> Defendant's third claim is that the prosecutor committed misconduct during the closing argument by vouching for a witness and misstating the evidence.
>
> A. Background
>
> During the closing argument, while discussing witness testimony, the prosecutor stated:
>
> "You heard from Stephen Siu and Shelley Stanful. And they told you what they remembered. They came in. They were civilians. Just happened to be there. Some of the few who actually gave statements.
>
> "You noticed that parking lot was full. Unfortunately, a lot of people don't want to stick around and talk. You can't do anything about that. But we do know that these two talked. And Stephen Siu was in the back of his—he was in the back of his truck unloading, delivering, trying to get a load ready when the shooting started.
>
> "And you could tell he was still a little bit shook up when he had to testify about this. And he told you how he still goes to that Chevron and thinks about it. He was being truthful. And he told you he heard a series of shots. A couple of series."
>
> While addressing Mathis' testimony, the prosecutor argued:
>
> "If you think about it, Jessica, with the stolen car, she lied she wanted to get her car back. She tried to get her car back that day after they got in a fistfight. Aaron and the Defendant. And he took off in the car. She tried to get the car back and she couldn't. And she reported it basically as a carjacking. The Defendant shows up with a gun and forcibly takes her car. And she told you why. Because things were

at 379.  Mathis did not testify that she was ever convicted of crimes related to the car theft.  Id.

16

getting out of control, I think, is how she put it.

"It was getting out of control between the Defendant, Aaron and her. It was causing issues with her relationship. So that's why she did it. And she even said, yeah, I wanted him to go to jail. Maybe it would cool him off. Settle things down. That doesn't mean she lied the day of the shooting, or lied about her identification of the Defendant."

The defense did not object to either argument.

During closing arguments, defense counsel told the jury: "[I]t's up to you to determine someone's credibility. My opinion of someone's credibility is not binding, honestly. I'm not permitted to give you my opinion of her credibility. Because, frankly, it's not relevant. [¶] You are the ones who determine credibility."

When the closing argument concluded, the trial court said it was concerned the prosecutor had "said that the delivery guy was being truthful. I'm going to reiterate to them that's their job to evaluate credibility." Defense counsel did not comment on the trial court's remark.

Before reading the jury instructions, the trial court told the jury: "During the closing statements, I heard a statement regarding the—I forgot his name. But I'll call him the delivery guy who was at the Chevron station testify that he was being truthful. It's not the job of the attorneys. And you do not accept what the attorneys say regarding who is truthful as a witness. As jurors, that is your job to determine the truthfulness or the credibility of the witness."

B. Analysis

The law governing claims of prosecutorial misconduct is well established. Prosecutorial misconduct exists "'under state law only if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.''" [Citations.]" (People v. Earp (1999) 20 Cal.4th 826, 858.) In more extreme cases, a defendant's federal due process rights can be violated when a prosecutor's improper remarks so infect the proceedings that it renders the trial fundamentally unfair. (Ibid.) On appeal, "[t]o prevail on a claim of prosecutorial misconduct based on remarks to the jury, the defendant must show a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (People v. Frye (1998) 18 Cal.4th 894, 970, overruled on another ground in People v. Doolin, supra, 45 Cal.4th 390, 421, fn. 22.)

Nevertheless, "'"[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety."' [Citation.]" (People v. Huggins (2006) 38 Cal.4th 175, 251-252.) An exception to this rule provides "[a] defendant will

17

be excused from the necessity of either a timely objection and/or a request for admonition if either would be futile. [Citations.]" (People v. Hill (1998) 17 Cal.4th 800, 820.) Similarly, failure to request the jury be admonished does not forfeit the issue for appeal if "'"an admonition would not have cured the harm caused by the misconduct." ' [Citation.]" (Ibid.)

Defendant has not established that an objection or request for admonition would have been futile. Indeed, the trial court admonished the jury sua sponte to disregard any arguments about witnesses' credibility and to reach its own conclusions in that regard. Defendant's contention is accordingly forfeited. Anticipating our ruling, defendant claims the failure to object constituted ineffective assistance of counsel.

To win reversal for ineffective assistance of counsel, a defendant must show both that counsel performed below professional norms of competence and that defendant was reasonably likely to have obtained a more favorable result absent counsel's incompetence. (People v. Maury (2003) 30 Cal.4th 342, 389.)

Defendant claims the prosecution's argument regarding Siu amounted to impermissible vouching for Siu's credibility. "A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' her comments cannot be characterized as improper vouching. [Citations.]" (People v. Frye, supra, 18 Cal.4th at p. 971.)

As the trial court determined, the prosecutor came close to this line when he told the jury the witness "was being truthful" without an obvious reference to evidence that directly supported that inference. However, any remote possibility that the jury could have understood the argument to be vouching rather than merely an observation regarding the state of the record was remedied by the trial court's timely and direct admonition to counter any such misunderstanding by any juror.

As for the other alleged instance of misconduct, defendant claims the prosecutor misstated the evidence by claiming defendant "used a firearm to 'carjack' Ms. Mathis car," an assertion not supported by the record. He notes that Mathis did not testify that defendant had a gun when he took her car and did not see a gun on the day when her car was taken.

This claim takes the prosecutor's statement out of context. The prosecutor argued as follows: "And she reported it basically as a carjacking. The Defendant shows up with a gun and forcibly takes

her car. And she told you why. Because things were getting out of control, I think, is how she put it." The prosecutor followed this by stating: "It was getting out of control between the Defendant, Aaron and her. It was causing issues with her relationship. So that's why she did it. And she even said, yeah, I wanted him to go to jail. Maybe it would cool him off. Settle things down That doesn't mean she lied the day of the shooting, or lied about her identification of the Defendant. I mean, it doesn't make any sense when she says that there was an issue. She wanted to diffuse it. And her boyfriend is shot dead in front of her."

This accurately states that Mathis reported defendant's taking of her car as a carjacking and the reasons she gave for doing this. Rather than asserting defendant carjacked Mathis' car, the argument implicitly asserts Mathis lied when she told the police defendant used a gun to take her car. This is not misconduct.

Since to the extent the prosecutor made one comment that could possibly be misconstrued by the jury as vouching it was quickly countered by the trial court, counsel was not ineffective in failing to object to the arguments in question. "Counsel is not ineffective for failing to make frivolous or futile motions." (People v. Thompson (2010) 49 Cal.4th 79, 122.) Such is the case here.

Respondent's Lodged Doc. 8 at pp. 10-14.

### 1. Alleged Witness Vouching

In the introduction to the answer, respondent states that petitioner defaulted his witness vouching claim based on trial counsel's failure to object. Answer at p. 2. However, in the points and authorities section of the answer, respondent addresses the merits of petitioner's witness vouching claim. Id. at p. 6-7. Because procedural default is an affirmative defense and respondent does not clearly raise procedural default as an affirmative defense as to petitioner's witness vouching claim, this Court considers the merits of this claim. See Scott v. Schriro, 567 F.3d 573, 580 (9th Cir. 2009).

Because no state court addressed the merits of petitioner's witness vouching claim (as it was found waived based on trial counsel's failure to object), this Court conducts a de novo review of this claim. See Wiggins, 539 U.S. at 534.

As observed by the California Court of Appeal, during closing argument the prosecutor made the following argument regarding witness Stephen Siu:

And you could tell he was still a little bit shook up when he had to testify about this. And he told you how he still goes to that Chevron and thinks about it. He was being truthful. And he told you he heard

1    a series of shots.  A couple of series.

2    8 RT at 582 (ECF No. 19-3 at 582).

3    The trial court later commented that it was concerned about the prosecutor's argument

4    regarding the truthfulness of Stephen Siu:

5    I sent the jury out because I had some concerns about what I heard
     during these closing arguments.  When you were stating going
6    through your initial closing, you said the delivery guy was being
     truthful.  I'm going to reiterate to them that's their job to evaluate
7    credibility.

8    8 RT at 683.

9    After calling the jury back, the trial court instructed the jury,

10   Okay.  In a moment I'm going to start reading the jury instructions.
     And before I do that, though, I do want to comment on a couple of
11   things.  During the closing statements, I heard a statement regarding
     the—I forgot his name.  But I'll call him the delivery guy who was
12   at the Chevron station testify that he was being truthful.  It's not the
     job of the attorneys.  And you do not accept what the attorneys say
13   regarding who is truthful as a witness.  As jurors, that is your job to
     determine the truthfulness of the credibility of the witness.

14

15   8 RT at 624.

16   A defendant's due process rights are violated when a prosecutor's comments render a trial

17   fundamentally unfair.  See Darden v. Wainwright, 477 U.S. 168, 170, 181, 183 (1986).  Improper

18   vouching, as a form of prosecutorial misconduct, "consists of placing the prestige of the

19   government behind a witness through personal assurances of the witness's veracity, or suggesting

20   that information not presented to the jury supports the witness's testimony."  United States v.

21   Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993) (as amended) (citation omitted); see, e.g.,

22   Johnson v. Sublett, 63 F.3d 926, 930 (9th Cir. 1995) (prosecutor's comment that "[h]e ... is a

23   credible witness. He was telling you the truth" is improper vouching); United States v. Kerr, 981

24   F.2d 1050, 1053 (9th Cir. 1992) (prosecutor improperly vouched for witness's credibility when he

25   made statements including "I think he (Jim Ludden) was very candid[,]" "I think he (Al Butler)

26   was candid. I think he was honest[,]" and "Al Butler was candid with you folks").  Even if a

27   prosecutor's conduct amounts to constitutional error, however, habeas relief will be granted only

28   if the petitioner can establish that the error had a substantial and injurious effect or influence in

20

1    determining the jury's verdict.  See Shaw v. Terhune, 380 F.3d 473, 478 (9th Cir. 2004) (citing

2    Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

3    　　　As discussed above, the trial court gave a timely and direct admonition to counter any

4    misunderstanding by any juror regarding the alleged witness vouching.  The jury is presumed to

5    have followed this admonition.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (applying

6    "the almost invariable assumption of the law that jurors follow their instructions.").  For these

7    reasons, this Court finds that the prosecutor's alleged improper vouching for witness Siu did not

8    have a substantial and injurious effect or influence in determining the jury's verdict.  After

9    conducting a de novo review of the record, this Court recommends that this claim of prosecutorial

10   misconduct be denied.[3]

11   　　　　2. Alleged Misstatement of Evidence During Closing Argument

12   　　　In the introduction to the answer, respondent states that petitioner defaulted his claim that

13   the prosecutor misstated the evidence during closing argument based on trial counsel's failure to

14   object.  Answer at p. 2.  However, in the points and authorities section of the answer, respondent

15   does not appear to address this claim.  Id. at p. 6-7.  While the California Court of Appeal

16   observed that trial counsel did not object to at-issue closing argument, it did not clearly find this

17   claim of prosecutorial misconduct defaulted and went on to address the merits of this claim.

18   Accordingly, this Court considers whether the California Court of Appeal's denial of petitioner's

19   claim alleging that the prosecutor committed misconduct by misstating evidence during closing

20   argument violated clearly established Supreme Court authority.

21   　　　Under Darden, it can be misconduct for prosecutors to manipulate or misstate the

22   evidence or law during closing arguments.  477 U.S. at 180-82.  Even so, such misconduct cannot

23

24   [3]  In the answer, respondent argues that there are no clearly established Supreme Court cases
     holding that prosecutorial witness vouching is unconstitutional.  Answer at pp. 6-7.  Respondent

25   argues, "[o]ft-cited cases saying vouching is 'improper' (or other condemning terms not actually
     saying it amounts to 'unconstitutional' conduct) arise from federal prosecutions."  Id.  The Ninth

26   Circuit, however, has not rejected prosecutorial misconduct witness vouching claims raised in
     post-AEDPA habeas corpus petitions filed pursuant to Section 2254 on the grounds of no clearly

27   established Supreme Court authority.  See Barnes v. Almager, 526 Fed. Appx. 775, 777-78 (9th
     Cir. 2013); Hines v. McDaniel, 50 Fed. Appx. 853, 854 (9th Cir. 2002); Petillo v. Worldand, 570

28   Fed. Appx. 697, 698 (9th Cir. 2014).

1  violate the Constitution unless the errant statements "so infected the trial with unfairness as to

2  make the resulting conviction a denial of due process." Id. at 181. That is because the

3  "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

4  the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). As

5  stated above, even if a prosecutor's conduct amounts to constitutional error, habeas relief will be

6  granted only if the petitioner can establish that the error had a substantial and injurious effect or

7  influence in determining the jury's verdict. See Shaw, 380 F.3d at 478 (citing Brecht, 507 U.S. at

8  637).

9          As noted by the California Court of Appeal, petitioner argues that the prosecutor misstated

10  the evidence by claiming that petitioner "used a firearm to 'carjack' Ms. Mathis' car," an

11  assertion not supported by the record. Petitioner argues that Mathis did not testify that petitioner

12  had a gun when he took her car and did not see a gun on the day when her car was taken.

13          At trial, Mathis testified that when she reported to the police that petitioner had stolen her

14  car, she told the police that petitioner had a gun when he stole the car. 6 RT at 350. Mathis

15  testified that she lied when she told the police that petitioner had a gun when he took her car. Id.

16  Mathis testified that she lied to the police about petitioner having a gun because,

17          I didn't want nobody getting hurt. And I felt like it would be a wake-
           up call for him. Like, I didn't want Aaron to hurt him. I didn't want
18         him to hurt Aaron. And I thought if he went to jail, maybe he would
           be like, this ain't worth it. And just leave the situation alone.
19

20  Id. at 352.

21          In closing argument, the prosecutor argued,

22          If you think about it, Jessica, with the stolen car, she lied she wanted
           to get her car back. She tried to get her car back that day after they
23         got in a fistfight. Aaron and the defendant. And he took off in the
           car. She tried to get the car back and she couldn't. So she went down
24         and reported it stolen. And she reported it basically as a carjacking.
           The defendant shows up with a gun and forcibly takes her car. And
25         she told you why. Because things were getting out of control, I think,
           is how she put it.
26
           It was getting out of control between the defendant, Aaron and her.
27         It was causing issues with her relationship. So that's why she did it.
           And she even said, yeah, I wanted him to go to jail. Maybe it would
28         cool him off. Settle things down. That doesn't mean she lied the day

                                        22

1
2
3

> of the shooting, or lied about her identification of the defendant. I mean, it doesn't make any sense when she says that there was an issue. She wanted to diffuse it. And her boyfriend is shot dead in front of her.

4    8 RT at 584-85.

5    This California Court of Appeal found that the prosecutor's closing argument did not

6    misstate the evidence. The California Court of Appeal found that the prosecutor's argument

7    accurately stated that Mathis reported petitioner taking her car as a carjacking, i.e., with a gun,

8    and the reasons she gave for doing this. The California Court of Appeal found that the

9    prosecutor's argument implicitly asserted that Mathis lied when she told the police that petitioner

10   had a gun when he took her car. For the reasons stated by the California Court of Appeal, this

11   Court finds that the prosecutor did not misstate the evidence during closing argument. This Court

12   finds that the California Court of Appeal's denial of this claim of prosecutorial misconduct was

13   neither contrary to nor an unreasonable application of clearly established Supreme Court

14   authority. Accordingly, this claim should be denied.

15       3. <u>Alleged Ineffective Assistance of Counsel</u>

16   In the discussion of the prosecutorial misconduct claims in the amended petition,

17   petitioner argues that counsel was ineffective for failing to object. Amended Petition at p. 9a. In

18   his opening brief on appeal and in the petition for review filed in the California Supreme Court,

19   petitioner argued that trial counsel was ineffective for failing to object to both instances of alleged

20   prosecutorial misconduct. Opening Brief at 30; Petition for Review at p. 15. In an abundance

21   of caution, this Court finds that the amended petition raises a claim of ineffective assistance of

22   counsel based on counsel's failure to object to both instances of alleged prosecutorial misconduct.

23   The California Court of Appeal addressed only petitioner's claim alleging that trial counsel was

24   ineffective for failing to object to the alleged witness vouching. Because no state court issued a

25   reasoned decision addressing the merits of petitioner's claim that counsel was ineffective for

26   failing to object to the prosecutor's alleged misstatement of evidence during closing argument,

27   this Court independently reviews the record to determine whether habeas corpus relief is available

28   ///

1    under § 2254(d) as to this claim.  See Stanley, 633 F.3d at 860.[4]

2            To prevail on his Sixth Amendment ineffective assistance of counsel claim, petitioner

3    must establish that counsel's performance fell below an objective standard of reasonableness and

4    that he suffered prejudice from the deficient performance.  See Strickland v. Washington, 466

5    U.S. 668, 690-92 (1984).  Deficient performance requires a showing that counsel's performance

6    was "outside the wide range of professionally competent assistance."  Id. at 690.  Prejudice is

7    found where there is a reasonable probability that, but for counsel's unprofessional errors, the

8    result of the proceeding would have been different.  Id. at 694.

9            As discussed above, the California Court of Appeal found that counsel was not ineffective

10   for failing to object to the alleged witness vouching because such an objection would have been

11   "frivolous" based on the trial court's "timely and direct admonition" to the jury that it was their

12   job to determine witness credibility.  This Court finds that the California Court of Appeal's

13   finding that trial counsel was not ineffective for failing to object to the alleged witness vouching

14   was not an unreasonable application of clearly established Supreme Court authority.

15   Accordingly, this claim should be denied.

16           This Court finds that an objection by trial counsel to the prosecutor's closing argument on

17   the grounds that the prosecutor misstated the evidence would have been denied.  As discussed

18   above, the prosecutor's closing argument regarding petitioner's theft of Mathis' car did not

19   misstate the evidence.  For these reasons, trial counsel was not ineffective for failing to object to

20   the prosecutor's closing argument regarding petitioner's theft of Mathis' car.  After independently

21   reviewing the record, this Court finds that the denial of this claim by the state courts was neither

22   contrary to nor an unreasonable application of clearly established Supreme Court authority.

23   Accordingly, this claim should be denied.

24           **D.  Claim Four: Sentencing Error**

25           The California Court of Appeal denied petitioner's sentencing error claim for the

26   following reasons:

27

28   ---

     [4]   Respondent did not address petitioner's ineffective assistance of counsel claims in the answer.

When the trial court imposed the 25 years to life term for the section 12022.53, subdivision (d) firearm enhancement, it did not address its discretion to strike the term. (See § 12022.53, subd. (h) ["[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section"].) No mention of the trial court's discretion was made in the probation report.

Defendant contends we must remand for resentencing so the trial court can exercise its discretion on whether to strike the enhancement. Defendant did not bring up any alleged failure of the trial court to exercise or understand its discretion, forfeiting the contention. (People v. Trujillo (2015) 60 Cal.4th 850, 856.) The claim is also without merit. "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law. [Citation.]" (People v. Gutierrez (2014) 58 Cal.4th 1354, 1390.) There is no evidence in the record that the trial court either did not understand or failed to exercise its discretion on whether to strike the enhancement. [Footnote 4.] We accordingly presume the trial court understood its discretion to strike the enhancement and declined to do so here.

> [Footnote 4: The jury was never instructed on the lesser firearm enhancements. Defendant claims for the first time in his reply brief that the trial court also had the discretion to not just strike the enhancement, but also modify it to a lesser uncharged enhancement under section 12022.53. The trial court's discretion to strike the enhancement and impose the lesser term was first recognized in a 2019 appellate decision. (See People v. Morrison (2019) 34 Cal.App.5th 217, 220 [the trial court has discretion to impose lesser enhancement].) Defendant, admits the basis for this claim, Morrison, was decided before sentencing. The claim is therefore forfeited by his failure to raise it at trial. The claim is also forfeited because defendant did not raise it until the reply brief. (Julian v. Hartford Underwriters Ins. Co. (2005) 35 Cal.4th 747, 761, fn. 4.) The Supreme Court agreed with the Morrison decision in a case decided after briefing was concluded. (People v. Tirado (2022) 12 Cal.5th 688, 692.) The fact that the Supreme Court has since confirmed that the trial court has the authority to impose the lesser term does not change the fact that this argument was available to defendant at the time of sentencing and his failure to raise it at sentencing or in his opening brief on appeal forfeits the contention on appeal.

Respondent's Lodged Document 8 at pp. 16-17.

In claim four, petitioner raises two claims. Petitioner argues that the trial court was unaware of, or ignored, the then recently announced rules giving the trial court the authority 1) to strike the firearm enhancement; and 2) in the alternative, to impose a lesser sentence range for the firearm enhancement. Amended Petition at pp. 11, 11a, 11b.

1    In the answer, respondent argues that petitioner's sentencing error claims are not

2    exhausted because petitioner failed to argue in state court that the sentencing error violated the

3    Constitution.  Answer at pp. 7-8.  In support of this argument, respondent cites Duncan v. Henry,

4    513 U.S. 364, 366 (1995).  Id. at p. 8 n. 36.  Failure to alert the state court to the constitutional

5    nature of the claim will amount to failure to exhaust state remedies.  See Duncan v. Henry, 513

6    U.S. at 366.  To exhaust state court remedies, it is not enough that all the facts necessary to

7    support the federal claim were before the state courts or that a "somewhat similar state law claim

8    was made."  Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam ); see also Scott, 567 F.3d at

9    582 ("Full and fair presentation additionally requires a petitioner to present the substance of his

10    claim to the state courts, including a reference to a federal constitutional guarantee").

11    In his opening brief on appeal and in the petition for review, petitioner argued that the

12    sentencing errors violated state law only.  See Respondent's Lodged Doc. 4 at pp. 2, 36-38

13    (opening brief on appeal); Respondent's Lodged Doc. 9 at pp. 2, 8, 16-20 (petition for review).

14    In both the opening brief and petition for review, petitioner sought remand for resentencing under

15    California Penal Code § 12022.53(h).  See Respondent's Lodged Doc. 4 at pp. 2, 36-38;

16    Respondent's Lodged Doc. 9 at pp. 2, 8, 16-20.

17    To the extent petitioner raises a federal claim in claim four, this Court finds that this claim

18    is not exhausted because petitioner failed to raise a federal claim in state court based on the

19    alleged sentencing errors. To the extent claim four raises state law claims, these claims are not

20    cognizable in federal habeas.  See Wilson v. Corcoran, 562 U.S. 1, 5, (2000) ("[F]ederal habeas

21    corpus relief does not lie for errors of state law.") (quoting Estelle, 502 U.S. at 67); see also

22    Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (finding claim regarding state

23    sentencing was "not within the purview of federal habeas corpus"); Porter v. Johnson, 2025 WL

24    1436138, at *11 (C.D. Cal. Feb. 13, 2025), findings and recommendations adopted, 2025 WL

25    1434678 (C.D. Cal. May 19, 2025) (trial court's failure to exercise its discretion, pursuant to Cal.

26    Penal Code § 12022.53, to dismiss or strike firearm allegation, or, in the alternative, impose a

27    lesser sentencing enhancement than the 25 to life term imposed fails to state federal claim for

28    relief).

1  **V.  CONCLUSION**

2          Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

3  habeas corpus be denied.

4          These findings and recommendations are submitted to the United States District Judge

5  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

6  after being served with these findings and recommendations, any party may file written

7  objections with the court and serve a copy on all parties.  Such a document should be captioned

8  "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

9  he shall also address whether a certificate of appealability should issue and, if so, why, and as to

10  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

11  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

12  § 2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

13  service of the objections.  The parties are advised that failure to file objections within the

14  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

15  F.2d 1153 (9th Cir. 1991).

16

17  Dated:  October 10, 2025

18                                                  _____

19                                                  CHI SOO KIM
                                                    UNITED STATES MAGISTRATE JUDGE
20

21

22  Aver1612.157/2

23

24

25

26

27

28